UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JOSEPH L. S.,<br><br>           Plaintiff,<br><br>      v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>           Defendant. | Case No. 5:23-cv-00006-BFM<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff Joseph L. S.[1] applied for Supplemental Security Income payments, alleging disability commencing on December 12, 2015. (Administrative Record ("AR") 170-85.) Plaintiff's application was denied at the initial level of review and on reconsideration, after which he requested a hearing in front of an Administrative Law Judge. (AR 137-41.) The ALJ held a hearing

---

[1] In the interest of privacy, this Memorandum Opinion and Order uses only the first name and middle and last initials of the non-governmental party in this case.

and heard from Plaintiff and a vocational expert (AR 24-46), after which he issued an unfavorable decision. (AR 10-19.) The ALJ found at step two of the disability analysis[2] that Plaintiff had the severe impairments of posttraumatic stress disorder; bipolar disorder; substance use disorder; and sprain/strain of the right knee with crepitus. (AR 12.) At step three, the ALJ concluded that those conditions did not meet or medically equal the severity of any impairment contained in the regulation's Listing of Impairments—impairments that the agency has deemed so severe as to preclude all substantial gainful activity and require a grant of disability benefits. (AR 13); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ then assessed Plaintiff's residual functional capacity—the most that Plaintiff can do despite his limitations. He determined that Plaintiff can perform medium work with limitations: he can do simple, routine tasks; can have no intense interactions with the public; can work in the presence of the public; can only occasionally engage in teamwork; can interact only occasionally with coworkers and supervisors; will be off-task up to 5 minutes per hour; and needs regular breaks every 2 hours. (AR 14.) The ALJ credited the vocational expert's testimony that an individual with those limitations would be able to perform jobs in the national economy. (AR 18-19.) He thus found Plaintiff not disabled and denied his claim. (AR 19.) The Appeals Council denied review of the ALJ's decision. (AR 1-5.)

Dissatisfied with the Agency's resolution of his claim, Plaintiff filed a Complaint in this Court. He argues that the ALJ erred when he (1) failed to properly weigh the June 16, 2021, mental health statement from his doctor at

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

Riverside County Mental Health; (2) failed to provide specific and germane reasons for rejecting evidence provided by Plaintiff's girlfriend; and (3) determined at step five that there is work Plaintiff can perform. (Pl.'s Br. at 2.) Defendant requests that the ALJ's decision be affirmed. (Def't's Br. at 13.)

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to deny benefits to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only means—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal quotation marks and citation omitted). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

## III. DISCUSSION

Although Plaintiff raises three issues, this Order addresses only two: the ALJ's failure to consider the mental health statement from Plaintiff's doctor at Riverside County Mental Health, and his decision to discount the third-party statement from Plaintiff's girlfriend. For the reasons that follow, the Court concludes that the ALJ's decision must be reversed on those two bases, and thus

1  declines to address the other error raised by Plaintiff.

2  **A.  Medical Opinions**

3  The first issue presented here is whether the ALJ properly evaluated a
4  particular medical opinion: the "Narrative Report" prepared by Carlos Muralles,
5  M.D., from Riverside County Mental Health. (AR 373.) In his Report, Dr.
6  Muralles described Plaintiff's mental-health symptoms and how they affect his
7  actions. (AR 373.) Though the ALJ's decision evaluated other medical opinions
8  in the case, the ALJ did not consider Dr. Muralles' Report, nor did he explain
9  why Dr. Muralles' view was not taken into account. Plaintiff argues that this
10 omission requires reversal, and the Court agrees.

11 Under governing regulations, an ALJ is required to articulate how
12 persuasive he finds the medical opinions and the prior administrative medical
13 findings in a claimant's record. 20 C.F.R. § 416.920c(b). He must consider both
14 the "supportability" and the "consistency" of each opinion. 20 C.F.R. §
15 416.920c(b)(2). An ALJ may (but does not have to) consider other factors that
16 might bear on the weight to be given to the medical opinions. *See id.* But he
17 *must* conduct this analysis as to each medical opinion in the record. The failure
18 of the ALJ to evaluate—or even mention—Dr. Muralles' report in his decision is
19 error.

20 Defendant says that the obligations described above apply only to "medical
21 opinions" and that Dr. Muralles' report is not a medical opinion. (Def't's Br. at
22 5.) Defendant is right that "medical opinion" is a term of art. It is defined as a
23 "statement from a medical source about what [a claimant] can still do despite
24 [his] impairment(s) and whether [the claimant has] one or more impairment-
25 related limitations or restrictions" in abilities to perform the physical and mental
26 demands of work. 20 C.F.R. § 416.913(a)(2). But Defendant is wrong that Dr.
27 Muralles' report does not meet that standard.

28

4

1    Dr. Muralles opined that Plaintiff is not able to maintain a sustained level
2 of concentration. He cannot sustain repetitive tasks for an extended period. And
3 he is unable to adapt to new or stressful situations. (AR 373.) Each of those
4 findings identifies "impairment-related limitations and restrictions." *See also* 20
5 C.F.R. § 416.913(a)(2)(i)(B) (including within the definition of medical opinion an
6 opinion as to the claimant's ability to "maintain concentration, persistence, or
7 pace" and "respond appropriately to supervision, co-workers, or work
8 pressures"). Likewise, Dr. Muralles' finding that Plaintiff exhibited a "hostile"
9 attitude signals a difficulty interacting with the public, co-workers, and
10 supervisors. (AR 373.) On the other side of the balance, Dr. Muralles also noted
11 that Plaintiff's memory is intact—an opinion on something Plaintiff *can* do
12 despite his limitations. *See* 20 C.F.R. § 416.913(a)(2)(i)(B) (including within the
13 definition of medical opinion an opinion as to the claimant's ability to
14 "remember"). Taken as a whole, these findings reflect Dr. Muralles' view that
15 Plaintiff has impairment-related limitations or restrictions in his ability to
16 perform the mental demands of work—making his Report a "medical opinion."
17    Defendant also argues that Dr. Muralles' Report is inconsistent with his
18 treatment notes from the same date, and asks the Court to disregard it on that
19 basis. (Def't's Br. at 5.) Even if that were true—which the Court does not decide—
20 it would not provide a basis to affirm the ALJ's decision. The ALJ did not purport
21 to reject Dr. Muralles' Report based on any inconsistency; he simply never
22 mentioned it at all. The Court may review only the reasons stated by the ALJ in
23 his decision "and may not affirm the ALJ on a ground upon which he did not
24 rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Arguments about the
25 substance of the Report, then, do not provide an alternative basis for affirmance.
26    The Court finds error because the ALJ's assessment of Plaintiff's residual
27 functional capacity ignores "significant and probative evidence." *Hill v. Astrue*,
28

5

698 F.3d 1153, 1161-62 (9th Cir. 2012). That error is one that requires reversal because it renders the ALJ's analysis of Plaintiff's residual functional capacity incomplete. *Id.* Dr. Muralles' findings supported limitations beyond those that the ALJ captured in his residual functional capacity analysis. Had Dr. Muralles' findings been credited, those findings might have called for a more limited residual functional capacity. The ALJ's incomplete residual functional capacity assessment was the basis of the hypotheticals presented to the vocational expert, which in turn means that the vocational expert's testimony and the ALJ's ultimate disability decision relying on that testimony are also infirm. Remand is therefore required on this issue.

**B.     Lay Witness Testimony**

Reversal is also required because the ALJ did not properly assess evidence provided by Plaintiff's girlfriend, Racasha McGordon.

**1.     Germane Reasons to Discount Lay Witness Testimony**

The Ninth Circuit has long held that lay witness testimony about a claimant's symptoms "is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Testimony from lay witnesses who interact with the claimant on a daily basis has "particular value," *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996), because it provides a perspective on the daily life of a claimant that medical professionals cannot offer.

In this case, the ALJ received a statement from Ms. McGordon describing Plaintiff's daily activities and behaviors. (AR 219-26.) Her description was vivid and thorough. She stated that Plaintiff has difficulty being around others; if he is around people for too long, he starts hearing voices, talks to himself, paces back and forth, and worries that others are talking about him or that they are

1    going to attack him. (AR 219.) He cannot sleep and paces at night. She has to
2    remind him to take care of his personal needs and to take his medications. (AR
3    220-21.) He does not cook because he "will forget how to"; he leaves the stove on,
4    burns the food, and cannot follow the instructions. (AR 221.) He will do chores
5    in the morning for about an hour, but she has to remind him and help him, and
6    encourage him to continue by praising his work. (AR 221.) Plaintiff does not go
7    out alone because he is paranoid and thinks people are "out to get him" or are
8    following him. (AR 222.) He does not shop and will give his card to someone to
9    shop for him. He does not handle money because he is not responsible with it;
10   he will spend it or give it away. (AR 222-23.) She has to remind Plaintiff to come
11   out of his room. He has problems getting along with family, friends, and
12   neighbors because he believes everyone is out to get him. He has a temper and
13   experiences mood swings. (AR 223-24.) According to Ms. McGordon, Plaintiff
14   has difficulty understanding, following instructions, remembering things,
15   completing tasks, getting along with others, concentrating, and reading and
16   following directions. (AR 224.) She describes it as "challenging" to have to guide
17   him step by step through even simple tasks. (AR 224.) He also reacts negatively
18   when his routine is changed, and when stressed, he demonstrates a temper,
19   mood swings, hears voices, and is paranoid. (AR 225.)

20         The ALJ discounted Ms. McGordon's statements, stating they were "of the
21   same general nature" as Plaintiff's testimony. (AR 15.) Moreover, the "clinical
22   and diagnostic medical evidence" discussed in his decision "does not fully
23   support Ms. McGordon's statements." (AR 15.) Neither of these is a germane
24   reason supported by substantial evidence to discount Ms. McGordon's
25   testimony.

26         First, substantial evidence does not support the ALJ's finding that Ms.
27   McGordon's statements "are of the same general nature" as Plaintiff's
28

7

testimony. In fact, her statements directly contradict much of Plaintiff's testimony. For instance, Plaintiff testified he goes out alone, does light household chores, prepares meals, and denies having problems taking care of his hygiene. (*See* AR 36-37 (Plaintiff testifying he had "no problem" showering, grooming, and dressing and that he does chores and sometimes does his own meal preparation).) That testimony led the ALJ to conclude Plaintiff "has engaged in a somewhat normal level of daily activity and interaction." (AR 15.) Not one of these statements is consistent with Ms. McGordon's description of Plaintiff's daily life. And the divergence between the two is important. The ALJ pointed to Plaintiff's "normal" level of activity and interactions as a basis for dismissing Plaintiff's testimony about his symptoms. (AR 15.) Ms. McGordon's testimony—essentially saying that Plaintiff was vastly overestimating his own capabilities—is important not only in its own right, but also because it undermines the reason the ALJ gave for discounting Plaintiff's testimony about the severity of his symptoms.

The second reason the ALJ gave for discounting Ms. McGordon's testimony was a conclusory statement that it was not fully supported by the clinical and diagnostic medical evidence in the record. (AR 15.) But the Ninth Circuit has made clear that that is impermissible to disregard lay witness testimony solely because it is not fully supported by medical evidence. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)). Lay witness testimony and medical opinions provide different insights into a claimant's capabilities, which is "precisely why [lay witness testimony] is valuable." *Id.* (citing *Smolen*, 80 F.3d at 1289). As such, the fact that a lay witness's testimony is not corroborated by medical records "is not a germane reason" to discount that witness's observations. *Id.* The ALJ can reject a specific piece of witness testimony based on a finding that a contrary

piece of medical evidence is more credible on a particular point—*if he gives reasons for doing so*—but he cannot reject lay witness testimony in whole simply because it provides information not found in the medical record. Because the ALJ failed to point to any specific conflict between Ms. McGordon's testimony and the medical evidence, this reason does not provide a germane basis supported by substantial evidence to reject Ms. McGordon's testimony.

### 2. Articulation of Reasons for Discounting Lay Testimony

Defendant barely attempts to defend the ALJ's reasons for discounting Ms. McGordon's testimony, arguing, instead, that SSA regulations now in effect do not require ALJs to address lay witness evidence in their decisions *at all*. (Def't's Br. at 6.) That argument is unpersuasive.

Defendant's argument rests on her reading of a 2017 amendment to the relevant regulation, 20 C.F.R. § 416.920c. As amended, that regulation describes how an ALJ must evaluate and articulate his findings regarding the persuasiveness of medical opinions. Subsections (a)-(c) set out criteria by which medical opinions are to be evaluated, including their consistency and supportability. 20 C.F.R. § 416.920c(a)-(c). Subsection (d) of the same regulation clarifies that the standard applicable to medical opinions does not apply to opinions that come from sources other than medical professionals. It states: "We are not required to articulate how we considered evidence from nonmedical sources *using the requirements in paragraphs (a)-(c) in this section*." *See* 20 C.F.R. § 416.920c(d) (emphasis added). But saying that an ALJ does not have to evaluate nonmedical evidence under the rubric applied to medical opinions does not necessarily mean that the ALJ is not required to evaluate lay witness evidence *at all*.

More importantly, by focusing on the amendment to Section 416.920c, Defendant misses the forest for the trees. The requirement that an ALJ consider

9

lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment. 20 C.F.R. § 416.913(a)(1)-(5) (listing kinds of evidence that the Commissioner will "consider," including evidence from nonmedical sources); 20 C.F.R. § 416.929(a) (the Commissioner "will *consider* all of your statements about your symptoms, such as pain, and any description your medical sources or *nonmedical sources* may provide about how the symptoms affect your activities of daily living and your ability to work") (emphases added). Crucially, the Ninth Circuit caselaw described above—the cases that requires ALJs to evaluate lay witness testimony and provide reasons "germane to each witness" if they choose to disregard it—finds its support in regulations requiring ALJs to *consider* nonmedical testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will *consider* observations by non-medical sources as to how an impairment affects a claimant's ability to work.") (emphasis added) (citation omitted).

*Dodrill* is right to treat the obligation that ALJs "consider" nonmedical evidence as having some corresponding requirement to explain *how* the evidence was considered; requiring an ALJ to consider particular evidence would mean little unless he must also articulate his reasons for accepting or rejecting it. Indeed, an ALJ is always required to state reasons for disregarding "significant probative evidence"—if only to facilitate later review of his disability decision. *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984); *see also* 42 U.S.C. § 405(b)(1) (any unfavorable decision must contain a "statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based"); *cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 493, 494 (9th Cir. 2015) (holding that an ALJ's explanation must be "sufficiently specific to allow a

reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony") (internal quotation marks and citation omitted).

Nothing in the 2017 amendment to § 416.920c purports to dispense with the longstanding requirement that ALJs articulate reasons for discounting lay witness testimony. *Kimberly T. v. Kijakazi*, No. 3:20-CV-1543-SI, 2022 WL 910083, at *7 (D. Or. Mar. 29, 2022) ("Because there are no provisions of the new regulations that unambiguously remove the ALJ's obligation to address lay witness testimony, it follows that the ALJ must continue to give germane reasons for discounting lay witness testimony."); *Joseph M.R. v. Comm'r of Soc. Sec.*, No. 3:18-cv-01779, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (observing that the regulation "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his [specific, germane] reasons for discounting those statements"). The Court concludes that the ALJ's obligation to provide germane reasons for rejecting lay witness testimony remains intact even after the 2017 amendments.

But even if Defendant were right that an ALJ is no longer required to articulate *germane* reasons for discounting lay witness testimony, the outcome in this case would be the same. Defendant argues that consideration of lay witness testimony is not required, but she concedes that ALJs are not *precluded* from considering lay witness testimony. (*See* Def't's Br. at 9-10.) And this is not a case where the ALJ chose not to consider lay witness testimony; here the ALJ *did* consider Ms. McGordon's testimony and he discounted it. In articulating his reasons for doing so, the ALJ betrayed his failure to understand just how different Ms. McGordon's testimony was from Plaintiff's. Because he did not grasp the difference between the two, the ALJ dismissed Ms. McGordon's testimony for an erroneous reason, and he credited Plaintiff's testimony about

11

his daily behaviors when perhaps he should have been more skeptical.

The ALJ's error was not "inconsequential to the ultimate nondisability determination" and, therefore, is a basis for reversal. *Brown-Hunter*, 806 F.3d at 492. And, to Defendant's point, this is true whether consideration of lay witness testimony is mandatory or discretionary. When an ALJ has discretion to do something or not do it, his legal or factual errors in exercising that discretion are still a basis for reversal. *Cf. Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001) (noting that since *Service v. Dulles*, 354 U.S. 363 (1957) "it has been well established that a discretionary decision may be reviewable to the extent that it rests on an explicit mistake of law or other egregious error"); *Eads v. Sec'y of Dep't of Health & Hum. Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

For these reasons, remand is also warranted for reconsideration of Ms. McGordon's testimony.

### IV. REMAND FOR FURTHER PROCEEDINGS

The Court will remand, rather than directing an award of benefits, because the circumstances of this case suggest that further administrative proceedings could remedy the ALJ's errors. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

Having found that remand is warranted, the Court declines to address

12

Plaintiff's remaining issue. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

## V.  CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: August 30, 2023

_____
BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE